SEYFARTH SHAW LLP
Phillip J. Ebsworth (SBN 311026)
pebsworth@seyfarth.com
Emily R. Nahan (SBN 295329)
enahan@seyfarth.com
400 Capitol Mall, Suite 2350
Sacramento, California 95814-4428
Telephone:     (916) 498-7012
Facsimile:      (916) 288-6313

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN SALTER, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>UNITED PARCEL SERVICE, INC., an Ohio Corporation, ROGER CARNEY, an individual, LEE MARUTA, an individual, KIM TSE, an individual, MATTHEW WOODRUFF, an individual, and DOES 1 to 50, inclusive,<br><br>                    Defendants. | Case No. 2:25-at-669<br><br>**DEFENDANT UNITED PARCEL SERVICE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Sacramento Superior Court, Case No. 25CV009320]<br><br>[*Filed Concurrently with Declaration of Ryan C. Swift; Civil Cover Sheet; Corporate Disclosure Statement*]<br><br>Complaint Filed: April 17, 2025 |

DEFENDANT UNITED PARCEL SERVICE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION
317535315v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF SHAWN SALTER AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant United Parcel Service, Inc., ("UPS") hereby files this notice of removal pursuant to 28 U.S.C. sections 1332, 1441(a) and (b), based on diversity of citizenship jurisdiction, in order to remove the above-captioned action from the Superior Court for the County of Sacramento to the United States District Court for the Eastern District of California and states that the removal is proper for the following reasons:

## I.    BACKGROUND

1.    On April 17, 2025, Plaintiff Shaw Salter ("Plaintiff") filed an unverified Complaint in the Superior Court of the State of California, County of Sacramento, entitled, *Shaw Salter, Plaintiff, v. United Parcel Service, Inc., an Ohio Corporation; Roger Carney, an individual; Lee Maruta, an individual; Kim Tse, an individual; Matthew Woodruff, an individual; and Does 1 through 50*, designated as Case No. 25CV009320 ("Complaint").

2.    Plaintiff's Complaint alleged the following nine causes of action against Defendant: (1) Race discrimination; (2) Disability discrimination; (3) Failure to Provide Reasonable Accommodation; (4) Failure to Engage in the Interactive Process; (5) Harassment (Disability); (6) Harassment (Race); (7) Retaliation (FEHA); (8) Retaliation (Whistleblower); and (9) Violation of California's Silenced No More Act/Stand Act. On April 24, 2025, UPS received, via personal service through its process server, the Summons; the unverified Complaint; and the Civil Case Cover Sheet. A true and correct copy of the service packet received by UPS is attached as **Exhibit A**.

3.    Exhibit A constitutes all process, pleadings, and orders served on or by UPS in the state court action prior to UPS filing this Notice of Removal.

## II.    TIMELINESS OF REMOVAL

4.    This Notice of Removal is timely, as it is being filed within thirty (30) days from UPS's receipt of an "amended pleading, motion, order or other paper from which [the predicate for removal] may be first ascertained." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1090 (9th Cir. 2021) citing 28 U.S.C. section 1446(b)(3).

1

DEFENDANT UNITED PARCEL SERVICE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION

317535315v.1

### III.   JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

5.   The Court has original jurisdiction of this action under 28 U.S.C. section 1332(a)(1). As set forth below, this action is removable pursuant to 28 U.S.C. section 1441(a), as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

#### A.   Plaintiff Is A Citizen Of California

6.   "An individual is a citizen of the state in which he is domiciled …." *Boon v. Allstate Ins. Co.,* 229 F. Sup. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F. 3d 853, 857 (9th Cir. 2001)). For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F. 3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F. 2d 747, 750 (9th Cir. 1986)). A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter*, 265 F. 3d at 857; *see also Zavala v. Deutsche Bank Trust Co. Americas*, No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (explaining that where a complaint alleges plaintiff resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").

7.   Plaintiff is and, at all times since the commencement of this action has been, a resident and citizen of the State of California. The Complaint alleges that Plaintiff "was and is a resident of the County of Contra Costa, State of California." (Exhibit A, Complaint ¶ 1.) Plaintiff worked for UPS at its Sacramento, San Pablo, and Oakland locations in the State of California. (*Id.* at ¶¶ 14, 69.)

8.   Plaintiff resided and, therefore, is, and at all times since the commencement of this action has been, a resident and citizen of the State of California.

#### B.   UPS Is Not A Citizen Of California

9.   UPS is now, and was at the time of the filing of this action, a citizen of a State other than California within the meaning of 28 U.S.C. section 1332(c)(1).

10.   As alleged in Plaintiff's Complaint, UPS is an Ohio Corporation. (Exhibit A, Complaint Caption.)

2

11.     Pursuant to 28 U.S.C. section 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009).

12.     The United States Supreme Court in *The Hertz Corp. v. Friend* held that a corporate entity's "principal place of business" for determining its citizenship is its "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." **And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center"** ...

559 U.S. 77, 92-93 (2010) (emphasis added).

13.     UPS's principal place of business is the State of Georgia because its "nerve center" is located in Georgia. Specifically, UPS's corporate headquarters are located exclusively in the State of Georgia, and all of UPS's executive and administrative functions take place in Georgia. Therefore, UPS is a citizen of the State of Georgia pursuant to the "nerve center" test, and also a citizen of the State of Ohio pursuant to its state of incorporation. *Id.* at 92-93.

**C.     The Individual Defendants' Citizenship Should Be Disregarded Because They Are Sham Defendants**

14.     A defendant's citizenship may be disregarded for diversity purposes if that party's joinder is a "sham" or "fraudulent" in the sense that no cause of action has been properly stated against that party. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339–40 (9th Cir. 1987) (plaintiffs cannot derail a defendant's right to remove by the trick of naming a non-diverse defendant where no claim can properly be maintained against that non-diverse defendant); *Hunter v. Philip Morris*, 583 F.3d 1039, 1043 (9th Cir. 2009) (a non-diverse defendant may be disregarded if that person's joinder is fraudulent in that no claim can be established against that party).

15.     Each of the four individually named defendants ("Individual Defendants") must be disregarded for purposes of diversity because they are "sham" defendants because they cannot be found liable as a matter of law. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir, 2001) (holding that removal based on diversity of citizenship was proper and that district court "correctly

3

ignored" joinder of a resident defendant when it was shown that plaintiff "could not possibly prevail" on her claim against the resident defendant); *Ritchie v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (quoting *McCabe*, 811 F.2d at 1339 ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."))

16.     A party is deemed to have been fraudulently joined if "after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Toth v. Guardian Indus. Corp.*, No. 1:12CV0001-LJO-DLB, 2012 WL 468244, *3 (E.D. Cal. Feb. 13, 2012). When determining whether a defendant is fraudulently joined, "[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Lewis*, 83 F.R.D. at 460 ("[I]t is well settled that upon allegations of fraudulent joinder … federal courts may look beyond the pleadings to determine if the joinder … is a sham or fraudulent device to prevent removal"); *McCabe*, 811 F.2d at 1339 (a defendant "is entitled to present the facts showing the joinder to be fraudulent").

17.     In this matter, Plaintiff has fraudulently joined the Individual Defendants as defendants to his discrimination and harassment claims. *See* Complaint. However, as discussed, below, the claims against the Individual Defendants are not viable as a matter of law—Plaintiff cannot bring discrimination claims against the Individual Defendants and Plaintiff does not allege sufficient allegations to establish a harassment claim against any named individual.

### 1.     Plaintiff's Discrimination Claims Against The Individual Defendants Fails As A Matter Of Law

18.     Plaintiff's claims against Individual Defendants for race discrimination and disability discrimination fail as a matter of law because that cannot be sustained against nonemployer individuals. They can be stated against the "employer" only. *Reno v. Baird*, 18 Cal. 4th 640 (1998) (nonemployer individuals cannot be held personally liable for discrimination under the FEHA because discrimination arises "out of the performance of necessary personnel management duties" that are "an inherent and unavoidable part of the supervisory function.")

4

317535315v.1

### 2.    Plaintiff's Harassment Claims Against The Individual Defendants Fail As A Matter Of Law

#### a.    Plaintiff's Disability Harassment Claim Against Carney and Maruta Fails Because The Alleged "Harassment" Was Not Severe Or Pervasive

19.    Plaintiff's Fifth Claim for Relief alleges disability harassment against UPS, Carney, and Maruta. *See* Complaint at ¶¶ 143–56. The basis for the claim is a statement that Plaintiff allegedly overheard Maruta say to Carney on a telephone call that "[a]nyone who parks in a handicapped space but can walk on their own two legs is either a pussy or faking it." *Id.* at ¶¶ 75, 146.

20.    Initially, there are no allegations that Carney did or said anything that could reasonably be characterized as harassing conduct—much less actionable harassment. As a claim cannot be maintained against Carney, his citizenship must be disregarded for purposes of diversity jurisdiction.

21.    The comment Plaintiff alleges Maruta said to Carney does not amount to actionable harassment. Whether a claim for harassment exists turns upon the totality of circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Hope*, 134 Cal.App.4th at 588. Here, even accepting Plaintiff's allegations as true, Maruta's sole comment, not directed at Plaintiff, cannot amount to conduct that was severe pervasive. *See Young v. Exxon Mobil Corp.*, 168 Cal.App.4th 1467 (2008) (summary judgment granted on harassment claim by plaintiff who suffered disabilities resulting from brain surgery where coworkers told customers they worked with a "psycho-retard," physically obstructed plaintiff from moving around in work areas, and ignored plaintiff); *Saqqa v. Cnty. of San Joaquin*, No. 21-16617, 2022 WL 17817445, at *2 (9th Cir. Dec. 20, 2022) (where only one of four comments directed at plaintiff, conduct was not severe or pervasive to constitute actionable harassment); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110–11 (9th Cir. 2000) (finding no hostile work environment where the supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea"); *see also Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) (single incident in which fellow employee touched plaintiff's stomach and then her breast under her sweater, while very offensive, did not rise to the level of harassment.)

317535315v.1

**b.**  **Plaintiff's Race Harassment Claim Against Tse and Woodruff Fails Because The Alleged "Harassment" Was Not Severe Or Pervasive**

22.  Plaintiff's Sixth Claim for Relief alleges race harassment against UPS, Tse, and Woodruff. *See* Complaint at ¶¶ 157–70. The basis for the claim is a statement that Plaintiff allegedly overheard Tse say "I'm tired of all these white guys in these positions… we need to bring more color onto the team. I want to bring on an Asian male." *Id.* at ¶¶ 41, 160.

23.  Initially, there are no allegations that Woodruff did or said anything that could reasonably be characterized as harassing conduct—much less actionable harassment. As a claim cannot be maintained against Woodruff, his citizenship must be disregarded for purposes of diversity jurisdiction.

24.  In any event, Woodruff is a resident and citizen of Arizona and has been since the inception of this action. Accordingly, even if Woodruff's citizenship was considered it would not destroy diversity jurisdiction.

25.  But again, much like his claim of disability harassment, the comment Plaintiff alleges he overheard Tse make does not amount to actionable harassment. Language that is merely offensive is not actionable, *Harris*, 510 U.S. at 23, because "[n]ot every insult or harassing comment will constitute a hostile work environment." *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000). So again, even when accepting Plaintiff's allegation as true, Tse's single comment cannot amount to harassment. *See Manatt v. Bank of America, NA*, 339 F.3d 792, 798–99 (9th Cir. 2003) (holding that numerous references to "China man," offensive jokes referencing "communists from Beijing," comments to plaintiff that "I've had the worst kind of trouble with your countrymen," and "China woman, China woman, get your butt over here," along with ridicule over plaintiff's mispronunciation of words, was not sufficiently severe or pervasive to alter the conditions of employment and thus not actionable harassment based on race); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642–43 (9th Cir. 2003) (finding no hostile environment discrimination where the employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others); *Santana v. Mission Hosp. Reg'l Med. Ctr.*, No. 820CV01095SBADSX, 2021 WL 1255194, at *3 (C.D. Cal. Jan. 19, 2021) (granting motion to dismiss on harassment claim where only allegation was that plaintiff overheard defendant speaking with another

6

317535315v.1

employee about a game he recently played called "runaway slave" because the comment alone was insufficient to establish pervasiveness); *Garza v. BNSF Ry. Co.*, No. 1:12CV032 DLB, 2012 WL 4036454, at *5 (E.D. Cal. Sept. 12, 2012) (dismissing harassment claim without leave to amend where allegations of comments about KKK membership, use of the term pumpernickels, and a preference to Caucasian employees not directed at plaintiffs were insufficient to state actionable harassment); *Siam v. Potter*, No. C 04-0129 MHP, 2005 WL 8166268, at *14 (N.D. Cal. May 17, 2005) (granting summary judgment on harassment claim where plaintiff overheard supervisor saying he wanted to "get rid of" her, was called a "dragon lady," and that Tagalog should only be spoken in a locked room, because the comments were but a few isolated incidents that were not objectively serious or frequent enough to interfere with plaintiff's ability to do her job.)

26.     Because Plaintiff fails to state a claim of harassment as a matter of law against any of the Individual Defendants, the citizenship of the Individual Defendants must be disregarded for purposes of diversity jurisdiction.

**D.     The Citizenship Of The Doe Defendants Should Be Disregarded**

27.     Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Does 1 through 50, inclusive, does not deprive this Court of jurisdiction.

**IV.     AMOUNT IN CONTROVERSY**

28.     While UPS denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 404 (9th Cir. 1996) ("[D]efendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount."). "The amount in controversy is 'not a prospective assessment of [a] defendant's liability.'" *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). The jurisdictional amount may be determined from the face of the complaint. *Singer v. State Farm Mutual Automobile Ins.*

7

*Co.*, 116 F.3d 373, 377 (9th Cir. 1997). However, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).

29.    In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n,* 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Conrad Assoc.'s v. Hartford Accident & Ind. Co.,* 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages). The amount in controversy is not limited to damages incurred prior to removal, but is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if a plaintiff is victorious. *Chavez v. JPMorgan Chase & Co*. 888 F.3d 413, 414–15 (9th Cir. 2018).

30.    Here, considered together, the general and special damages sought by Plaintiff, along with the attorneys' fees and punitive damages that might be awarded if Plaintiff prevails, establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.00.

**A.    Compensatory Damages For Plaintiff's Alleged Lost Income Establish The Amount In Controversy**

31.    Plaintiff alleges he "was harmed because he suffered loss of employment, loss of income and benefits." (Exhibit A, Complaint, ¶¶ 93, 107, 201; *see also* ¶¶ 175, 188; Prayer ("On each cause of action, for loss of wages, income, earnings, earning capacity, overtime, pension, benefits, and other economic damages in a sum to be ascertained according to proof.")

32.    Plaintiff's employment with UPS ended on October 6, 2023, at which time his hourly rate was $26.44 and he generally worked over 27 hours per week.

33.    If trial were set for one year from now (approximately 32 months after Plaintiff's employment ended), Plaintiff could potentially seek $98,515.44 in back wages alone, not including damages for lost benefits. This sum does not include any future wages Plaintiff seeks to recover which

8

would only increase the amount in controversy. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416-17 (9th Cir. 2018) (alleged lost future wages should be considered when determining the amount in controversy because alleged lost future wages are "at stake" in the litigation).

**B.    The Claims In The Complaint Also Establish The Amount In Controversy**

34.    Plaintiff's Complaint alleges race discrimination, disability discrimination, failure to provide reasonable accommodations, failure to engage in the interactive process, disability harassment, race harassment, retaliation under FEHA, whistleblower retaliation, and violation of California's Silence No More Act/Stand Act. Plaintiff claims damages for general, special, economic, and non-economic damages; loss of employment, loss of income and benefits, denial of promotion opportunities; physical, mental, and emotional injuries; damages to reputation; expenses for health care services; actual, consequential, and incidental financial losses; prejudgment interest; costs of suit; attorneys' fees; expert witness fees; and punitive damages.

35.    To establish the amount in controversy, a defendant may rely on jury verdicts in cases involving similar facts and claims. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). Should Plaintiff prevail at trial, it is more likely than not that he would recover over $75,000 in damages as there have been, in recent years, several verdicts in disability discrimination and harassment cases entered in favor of plaintiffs in California where the awarded damages exceeded $75,000. *See e.g. McHaar v. FedEx Ground Package Sys. Inc.*, Santa Clara County Superior Court Case No. 20-cv-366270, 2023 WL 9661480 (May 12, 2023) (plaintiff awarded $1.5 million in non-economic damages on disability discrimination claim); *Quemada v. Cordoba Corporation*, Los Angeles County Superior Court Case No. BC621735, 2019 WL 8581402 (Dec. 6, 2019) (plaintiff awarded over $1 million in general damages for disability discrimination claim where defendant ignored plaintiff's requests for accommodation); *Shirvanyan v. Los Angeles Community College District*, Los Angeles County Superior Court Case No. BC 633224, 2018 WL 8968231 (Dec. 18, 2018) (plaintiff awarded over $2.75 million on disability discrimination claim where defendant ignored plaintiff's requests for accommodation); *Rossi v. County of Napa*, Napa County Superior Court Case No. 26-66881, 2018 WL 3105186 (Feb. 27, 2018) (plaintiff awarded $570,081 on disability discrimination claim); *Kranson v. Federal Express Corp.*, United States District

9

Court, N.D. California Case No. 11CV05826, 2012 WL 7832293 (Oct. 15, 2012); *Wehe v. Wal-Mart Stores, Inc.*, Sacramento County Superior Court Case No. 34-2008-00030876, 2010 WL 3411462 (July 1, 2010) (jury awarded plaintiff $400,000 on disability discrimination claim)

36.   Plaintiff's allegations that he was discriminated against because of disability are similar to the issues in these cases which demonstrate that, for diversity purposes, the value of Plaintiff's alleged emotional distress claims on their own easily exceed the $75,000 amount in controversy requirement.

37.   Similarly, verdicts in race discrimination and harassment cases entered in favor of plaintiffs in California often exceed $75,000. *See e.g. Harper v. Regents of the Univ. of California*, Alameda County Superior Court Case No. RG-19-015571, 2024 WL 3287299 (Feb. 27, 2024) (plaintiff awarded $2 million in non-economic damages on claim of race discrimination); *Wang v. Rees Scientific Corporation*, San Francisco County Superior Court Case No. CGC-13-528233, 2014 WL 8108412 (Jun. 9, 2014) (plaintiff awarded $498,906 on race discrimination claim where plaintiff alleged less successful employee of different race was given position over her); *Watson v. Janssen Pharmaceuticals, Inc., et al.*, Los Angeles County Superior Court Case No. BC696761, 2022 WL 20508720 (Nov. 9, 2022) (plaintiff award $890,080 on race discrimination claim including that employer failed to investigate her complaints of discrimination)

38.   Plaintiff's allegations that he was discriminated against because of his race are similar to the issues in these cases which demonstrate that, for diversity purposes, the value of Plaintiff's alleged emotional distress claims on their own easily exceed the $75,000 amount in controversy requirement.

39.   Verdicts in whistleblower cases entered in favor of plaintiffs in California also often exceed $75,000. *See e.g. Kirkpatrick v. The City of Oakland, California*, United States District Court, N.D. California Case No. 3:20CV05843, 2022 WL 22843755 (May 26, 2022) (plaintiff awarded $337,635 on plaintiff's whistleblower claim); *Eidson v. The Regents of the University of California*, Alameda County Superior Court Case No. RD-17-856649, 2019 WL 3288246 (May 23, 2019) (jury awarded $200,000 in general damages finding defendant liable for plaintiff's claim of retaliation for making complaints); *Norman, Ph.D. v. Hanna Boys Center Inc.*, Sonoma County Superior Court Case No. SCV260065, 2018 WL 5311339 (Jun. 12, 2018) (plaintiff awarded $500,000 in general damages on whistleblower claim); *Woodruff v. Pacific Gas and Electric*, San Francisco County Superior Court Case

10

317535315v.1

No. CGC-16-556125, 2018 WL 4908010 (Jul. 20, 2018) (plaintiff awarded $341,186 on whistleblower claim).

### C. Emotional Distress Damages

40. Plaintiff also claims damages for emotional distress. (Complaint ¶¶ 93–95, 107–09, 121–23, 136, 138, 150–52, 164–66, 175–77, 188–90, 201–02; and Prayer.) A review of jury verdicts in California demonstrates that emotional distress awards in discrimination, harassment, and retaliation cases commonly exceed $75,000. *McHaar,* 2023 WL 9661480 (plaintiff awarded $1.5 million in non-economic damages on disability discrimination claim); *Quemada*, 2019 WL 8581402 (plaintiff awarded over $1 million in general damages for disability discrimination claim where defendant ignored plaintiff's requests for accommodation); *Harper*, 2024 WL 3287299 (plaintiff awarded $2 million in non-economic damages on claim of race discrimination); *Eidson*, 2019 WL 3288246 (jury awarded $200,000 in general damages finding defendant liable for plaintiff's claim of retaliation for making complaints); *Norman, Ph.D.*, 2018 WL 5311339 (plaintiff awarded $500,000 in general damages on whistleblower claim)

41. Plaintiff's allegations that he was discriminated against and discharged because of a disability, his race, and protected activities are similar to the alleged issues in these cases.

### D. Attorneys' Fees And Costs

42. Plaintiff also claims that he is entitled to attorneys' fees and costs. (*See* Complaint at ¶¶ 98, 112, 126, 141, 155, 169, 180, 193, 205, and Prayer.) Future attorneys' fees are properly considered in calculating the amount-in-controversy for purposes of removal on grounds of diversity jurisdiction. *Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 794 (9th Cir. 2018) (in light of *Chavez,* 888 F.3d 413, a court must include future attorneys' fees recoverable by statute or contract when determining whether the amount in controversy has been met). *See also Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory).

43. Under California Government Code section 12965(b), the court may award fees and costs to the "prevailing party" in Fair Employment and Housing Act actions. Although the statute provides that the court "may" award fees, cases hold that a prevailing plaintiff is entitled to fees "absent

11

DEFENDANT UNITED PARCEL SERVICE, INC'S NOTICE OF REMOVAL OF CIVIL ACTION

317535315v.1

circumstances that would render the award unjust." *Horsford v. Board of Trs. of Cal. State Univ.,* 132 Cal. App. 4th 359, 394 (2005).

44.    Courts have also awarded far in excess of $75,000 in attorneys' fees in cases involving disability discrimination. *See, e.g., Hoover v. Dignity Health d/b/a St. John's Pleasant Valley Hospital*, Ventura County Superior Court Case No. 56-2016-00481136-CU-OE-VTA, 2018 WL 10015195 (plaintiff awarded $957,510 in attorneys fees after prevailing on disability discrimination claims); *Beasley v. East Coast Foods Inc. d/b/a Roscoe's House of Chicken N' Waffles*, Los Angeles County Superior Court Case No. BC509995, 2015 WL 5678367 (Sep. 8, 2015) (plaintiff awarded over $1.5 million in attorneys fees after prevailing on race discrimination and retaliation claims); *Begazo v. Passages Silver Strand, LLC*, 2017 WL 2402841 (Los Angeles Sup. Ct.) (court awarded $375,568 in attorneys' fees to Plaintiff after prevailing on claims for retaliation on the basis of disability and wrongful termination); *Crawford v. DIRECTV, Inc.,* 2010 WL 5383296 (Los Angeles Sup. Ct.) (approving attorneys' fee award of $159,762.50 in alleged disability discrimination and failure to accommodate case); *Denenberg v. Cal. Dep't of Transp.,* 2006 WL 5305734 (San Diego Sup. Ct.) (attorney's fees award of $490,000 for claims including disability discrimination and failure to accommodate).

45.    While UPS denies any liability as to Plaintiff's claims, for each of the foregoing reasons, it is "more likely than not" that the amount in controversy exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a)

### E.    Punitive Damages

46.    Finally, the Court must also consider Plaintiff's request for punitive damages in determining the amount in controversy. *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); (*see* Complaint at Prayer.)

47.    Courts have affirmed jury verdicts exceeding $1 million in punitive damages in alleged similar discrimination, harassment, and retaliation cases. *See, e.g., Roby v. McKesson Corp.,* 47 Cal. 4th 686 (2009) (holding that a punitive damage award of $1.9 million equal to the compensatory damage award was appropriate in disability case); *Harris v. Herring Networks, Inc., et al.*, San Diego County

DEFENDANT UNITED PARCEL SERVICE, INC'S NOTICE OF REMOVAL OF CIVIL ACTION
317535315v.1

Case No. 37-2018-00033996-CU-OE-CTL, 2020 WL 1890593 (Feb. 3, 2020) (plaintiff awarded $810,000 in punitive damages after prevailing on discrimination and retaliation for complaining about discrimination claims); *Quemada*, 2019 WL 8581402 (plaintiff awarded $1.5 million in punitive damages after prevailing on disability discrimination claim); *Guerrero v. Crown Energy Services, Inc., et al.*, San Diego County Superior Court Case No. 37-2017-00020532-CU-OE-CTL, 2019 WL 4240699 (Mar. 1, 2019) (plaintiff awarded $900,000 in punitive damages after prevailing on disability discrimination claim); *Hernandez v. VMS Auto Body Collision Center, Inc., et al.*, Los Angeles County Superior Court Case No. BC717285, 2019 WL 8272669 (Nov. 19, 2019) (plaintiff awarded $1.2 million in punitive damages after prevailing on whistleblower and discrimination claims); *Lopez v. CIA Wheel Group, Inc., et al.*, Los Angeles County Superior Court Case No. BC545112, 2019 WL 3774402 (plaintiff awarded $500,000 in punitive damages after prevailing on disability discrimination claim)

48.     Based upon the allegations contained in Plaintiff's Complaint, UPS is informed and believes that Plaintiff seeks damages within the jurisdictional authority of this Court. Since diversity of citizenship exists between the Plaintiff and Defendant, and the matter in controversy between the parties is in excess of $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. § 1332(a)(1). This action is therefore a proper one for removal to this Court.

**V.    VENUE**

49.     Venue lies in the Eastern District pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 84(c). This action originally was brought in the Superior Court of the State of California, County of Sacramento, which is located within the Eastern District of the United States District Court for California.

**VI.    NOTICE OF REMOVAL**

50.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Sacramento, in the State Court Action.

51.     This Notice of Removal will be served on counsel for Plaintiff. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

13

DEFENDANT UNITED PARCEL SERVICE, INC'S NOTICE OF REMOVAL OF CIVIL ACTION

317535315v.1

## VII.    PRAYER FOR REMOVAL

52.    WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of Sacramento, to the United States District Court for the Eastern District of California.

DATED: May 27, 2025                                    SEYFARTH SHAW LLP


By:  */s/ Phillip J. Ebsworth*
      Phillip J. Ebsworth
      Emily R. Nahan

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.

14

DEFENDANT UNITED PARCEL SERVICE, INC'S NOTICE OF REMOVAL OF CIVIL ACTION

317535315v.1

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
UNITED PARCEL SERVICE, INC., an Ohio Corporation, ROGER CARNEY, an individual, LEE MARUTA, an individual, KIM TSE, an individual, MATTHEW WOODRUFF, an individual, and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** SHAWN SALTER, an individual

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
04/18/2025
By: _____ P. Russell _____ Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:

*(El nombre y dirección de la corte es):*

**CASE NUMBER:**
*(Número del Caso):*
25CV009320

Gordon D. Schaber Sacramento County Courthouse, 720 9th Street, Sacramento, CA 95814

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Maks Shapiro, Esq., 320 N. Palm Drive, Unit 115, Beverly Hills, CA 90210, 310-633-5310; Shawn P. Thomas, Esq., 1318 Silver Lake Blvd. Los Angeles, CA 90026, 718-541-7934

DATE: ~~4/17/2025~~ 04/18/2025     Clerk, by _/s/ P. Russell_ , Deputy
*(Fecha)*     *(Secretario)*     *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* United Parcel Service, Inc., an Ohio corporation
   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)        ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form | | Clear this form |

THE LAW OFFICE OF SHAWN P. THOMAS
SHAWN P. THOMAS, State Bar No. 302593
*SPT@shawnthomas.esq*
1318 Silver Lake Blvd.
Los Angeles, CA 90026
Telephone: (718) 541-7934

ARDEN LAW FIRM, P.C.
MAKS SHAPIRO, State Bar No. 325832
*mshapiro@arden.law*
320 N. Palm Drive, Unit 115
Beverly Hills, CA 90210
Telephone: (310) 633-5310

**Attorneys for Plaintiff**
SHAWN SALTER

ELECTRONICALLY FILED
Superior Court of California
County of Sacramento
04/17/2025
By: _____ P. Russell _____ Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| SHAWN SALTER, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED PARCEL SERVICE, INC., an Ohio Corporation, ROGER CARNEY, an individual, LEE MARUTA, an individual, KIM TSE, an individual, MATTHEW WOODRUFF, an individual, and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: 25CV009320 <br><br> **COMPLAINT FOR DAMAGES:** <br><br> 1. **RACE DISCRIMINATION** <br><br> 2. **DISABILITY DISCRIMINATION** <br><br> 3. **FAILURE TO PROVIDE REASONABLE ACCOMODATION** <br><br> 4. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS** <br><br> 5. **HARASSMENT (DISABILITY)** <br><br> 6. **HARASSMENT (RACE)** <br><br> 7. **RETALIATION (F.E.H.A.)** <br><br> 8. **RETALIATION (WHISTLEBLOWER)** <br><br> 9. **VIOLATION OF CALIFORNIA'S SILENCED NO MORE ACT/STAND ACT** <br><br> **DEMAND FOR JURY TRIAL** |

- 1 -
COMPLAINT FOR DAMAGES

## GENERAL ALLEGATIONS

1. At all times relevant hereto, SHAWN SALTER ("Plaintiff") was and is a resident of the County of Contra Costa, State of California, and Plaintiff was and is a competent adult.

2. At all times relevant hereto, Plaintiff was employed by Defendant UNITED PARCEL SERVICE, INC., ("Defendant UPS" or "Defendant") as a Prevention Supervisor, Security Supervisor, Investigator, and finally, an Investigation Supervisor.

3. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant hereto, Defendant UPS was an entity engaged in purposeful commercial activity within the County of Sacramento, State of California and at all times relevant hereto, employed Plaintiff.

4. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant in this Complaint, Defendant Roger Carney ("Defendant Carney") was an individual who worked for Defendant UPS as the San Pablo Security Supervisor. Plaintiff is informed and believes that Defendant Carney resides in Fremont, California.

5. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant in this Complaint, Defendant Lee Maruta ("Defendant Maruta") was an individual who worked for Defendant UPS as the North Bay Security Manager. Plaintiff is informed and believes that Defendant Maruta resides in Sacramento, California.

6. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant in this Complaint, Defendant Kim Tse ("Defendant Tse") was an individual who worked for Defendant UPS as the Oakland Security Manager. Plaintiff is informed and believes that Defendant Tse resides in Contra Costa County, California.

7. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant in this Complaint, Defendant Matthew Woodruff ("Defendant Woodruff") was an individual who worked for Defendant UPS as West Coast Security Director. Plaintiff is informed and believes that Defendant Woodruff resides in Los Angeles, California.

8. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1 through 50, inclusive, and therefore, Plaintiff sues those Defendants by such fictitious names. Plaintiff will amend this complaint to allege their names and capacities when ascertained.

COMPLAINT FOR DAMAGES

Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged herein.

9.      Plaintiff has complied with and/or exhausted any applicable statutes and/or administrative and/or internal remedies and/or grievance procedures or is excused from complying therewith.

10.     Plaintiff has filed an administrative complaint with the California Civil Rights Department ("CRD") substantially alleging the acts and conduct of Defendants as herein described. Attached hereto as Exhibit 1 are a true and correct copy of the CRD complaint filed by Plaintiff and a "right to sue" notice issued to Plaintiff by the CRD on or about April 17, 2025.

## FACTUAL ALLEGTIONS

11.     Plaintiff Shawn Salter was employed by Defendant UPS for nearly two years, beginning as a Loss Prevention Supervisor before being reclassified as Security Supervisor and later promoted to Investigator and ultimately Investigation Supervisor.

12.     Throughout his tenure at UPS, Plaintiff was a diligent, experienced, and dedicated loss prevention professional.

13.     Plaintiff was considered a strong candidate for promotion to full-time supervisor and his superiors repeatedly encouraged him to apply for higher-level roles within the company.

14.     In mid-2023, Plaintiff was called into a meeting by a manager who traveled to Plaintiff's UPS location from Sacramento.

15.     The manager stated to Plaintiff, "as you know there was an investigation," to which Plaintiff replied that the only investigation he was aware of related to that very manager.

16.     The manager then informed Plaintiff that he was being terminated effective immediately but refused to provide a reason, stating that Plaintiff could "find that out later."

17.     Defendant UPS' Human Resources department ("HR") told Plaintiff he could apply for review through Defendant UPS's internal Employment Disciplinary Review (EDR) process.

18.     Security then escorted Plaintiff out of the building.

- 3 -

19.    Following his unexplained termination, Plaintiff applied for unemployment benefits with the California Employment Development Department ("EDD"), which Defendant UPS opposed.

20.    During the EDD process, Plaintiff truthfully informed the agency that Defendant UPS had not disciplined him.

21.    Defendant UPS, however, claimed that it had terminated Plaintiff due to misconduct.

22.    EDD initially sided with Defendant UPS and denied Plaintiff's claim.

23.    Six months later, at Plaintiff's EDD appeal hearing, Defendant UPS participated by phone.

24.    When the administrative law judge asked for the reason for Plaintiff's termination, Defendant UPS claimed it was for "breaking confidentiality and retaliation."

25.    Plaintiff disputed these claims and explained that he had only discussed his own personnel matters with his own supervisor.

26.    Plaintiff explained that it was that same supervisor who then relayed Plaintiff's concerns to their mutual superior—security supervisor Roger Carney ("Defendant Carney")—the subject of Plaintiff's complaints.

27.    In retaliation, Defendant Carney and management fabricated allegations that Plaintiff had created a "hostile environment," leading to a retaliatory HR investigation.

28.    UPS management ordered Plaintiff to participate in an interview with a designated "neutral" investigator, who demanded that Plaintiff sign a confidentiality agreement as a condition of participating.

29.    Plaintiff, citing his legal rights under California law, refused to waive those rights by agreeing to the terms of UPS's confidentiality agreement. Plaintiff ultimately signed "under protest," having been told that his refusal to sign would be treated as a "voluntary resignation."

30.    During the subsequent investigatory interview, Plaintiff detailed his reports of retaliation, discrimination, and a hostile work environment, which had persisted from January 2022 to June 2022, and were primarily related to the conduct of Plaintiff's supervisor, Defendant Carney.

- 4 -

31. In June 2022, Plaintiff was transferred to another facility, at which time he again raised concerns about the company's failure to investigate his complaints.

32. Defendant UPS assigned a second investigator to the investigation, but her initial comments revealed that she was biased.

33. When the second investigator expressed disbelief that another Manager, Kim Tse ("Defendant Tse"), could have created a hostile work environment as Plaintiff described, Plaintiff formally requested that the investigator be removed.

34. Defendant UPS agreed and assigned a new investigator.

35. The replacement investigator had an initial intake call with Plaintiff and ten days later attempted to facilitate a conference call between Plaintiff and Defendant Tse's supervisor, Mathew Woodruff ("Defendant Woodruff.")

36. Plaintiff raised concerns that it was inappropriate for the investigator to act as a go-between in lieu of a formal investigatory process.

37. Despite those objections, the call proceeded.

38. During the conversation, Defendant Woodruff attempted to downplay Plaintiff's concerns and encouraged Plaintiff to "just forget this and buckle down and work hard," promising Plaintiff a promotion if he did so.

39. Plaintiff replied that he had already earned a promotion based on prior performance.

40. Defendant Tse had previously claimed that Plaintiff lacked the tenure to be considered for a promotion.

41. Yet Plaintiff later overheard Defendant Tse tell another employee that the position remained open because "I'm tired of all of these white guys in these positions... we need to bring more color onto the team. I want to bring on an Asian male."

42. Defendant UPS ultimately did in fact hire an Asian male for the position.

43. Plaintiff raised this concern with Defendant Woodruff, who once again dismissed Plaintiff's report and reiterated, "I make all the final decisions on full-time supervisors."

COMPLAINT FOR DAMAGES

44. Plaintiff asked Defendant Woodruff whether he had approved the hire of a supervisor in Fresno named "Charles"—a candidate Plaintiff personally knew to have falsified elements of his resume.

45. , Charles had claimed to have held positions that do not exist at a prior company and had less overall experience than Plaintiff.

46. Defendant UPS rejected Plaintiff's candidacy for a similar role, citing his lack of tenure at Defendant UPS.

47. When Plaintiff asked what qualifications Charles had that Plaintiff did not, Defendant Woodruff backtracked and said the decision was made by another supervisor named "Sarah."

48. Plaintiff pointed out the inconsistency—Defendant Woodruff had previously claimed that he made all final promotion decisions.

49. Defendant Woodruff became visibly upset after Plaintiff pointed out the inconsistency.

50. Following that conversation, Defendant UPS rejected Plaintiff for two additional supervisory positions.

51. The candidates selected for those positions had less experience than Plaintiff.

52. One week prior to the interview for promotion to one of those positions , manager Lee Maruta ("Defendant Maruta") called Plaintiff into a conference room to question him about a recent TSA security audit Plaintiff had conducted—an area in which Plaintiff is certified.

53. Defendant Maruta accused Plaintiff of "pencil whipping" the audit, i.e., signing off without actually conducting a proper rigorous audit.

54. Plaintiff was understandably offended by the accusation, which was unfounded.

55. Supervisor "Pierro," who was also present, confirmed that Plaintiff had completed the audit appropriately.

56. Defendant Maruta attempted to walk back the accusation, but Plaintiff informed him that it appeared to be an intentional attempt to create a pretext to deny Plaintiff's upcoming promotion.

- 6 -

COMPLAINT FOR DAMAGES

57.    Plaintiff ultimately did not receive the promotion.

58.    Instead, Defendant UPS hired a candidate from outside the company who previously operated a fishing charter business and lacked relevant experience.

59.    All of this information—Plaintiff's concerns about discrimination, retaliation, and pretextual discipline—was relayed to the HR investigator during the internal interview.

60.    The investigator confirmed that he had already interviewed Pierro and Defendant Carney and was simply seeking Plaintiff's version of events.

61.    Defendant UPS later claimed that Plaintiff had "retaliated against Roger [Carney]," though no evidence supported the accusation and their relative positions on the organizational chart made it effectively impossible for Plaintiff to retaliate against Defendant Carney.

62.    After his termination, Plaintiff contacted Defendant UPS' corporate headquarters and submitted written complaints to the CEO and four senior HR vice presidents.

63.    On November 6, 2023, a corporate investigator—who was not part of Plaintiff's reporting chain—contacted Plaintiff for a two-hour interview.

64.    Plaintiff never heard back from Defendant UPS regarding the outcome of that investigation.

65.    However, approximately five weeks later, other employees informed Plaintiff that Defendant Woodruff had been terminated for retaliation and blocking promotions.

66.    This mirrored the concerns Plaintiff had raised during the interview.

67.    Plaintiff also experienced disability discrimination and a failure by Defendants to accommodate his disability.

68.    Plaintiff suffers from severe osteoarthritis, resulting in bone-on-bone pain in his hip.

69.    Although Plaintiff's job required no physical labor, his reassignment to a new facility in San Pablo forced him to walk significantly farther to his office than he had in Oakland, where parking was closer.

70.    Plaintiff requested an accommodation after discovering that drivers were occupying all of the handicap parking spaces, and he asked to be permitted to park near the building like other senior employees.

- 7 -

COMPLAINT FOR DAMAGES

71.    Management denied the Plaintiff's request to park closer to the building to accommodate his disability, and told Plaintiff to "pick your battles" and "move on."

72.    Plaintiff formally submitted an accommodation request, but that request was ignored and Defendant UPS strung Plaintiff along for more than a year.

73.    Only after Plaintiff filed an internal HR complaint did the issue receive even minimal attention.

74.    Roughly five weeks before Plaintiff's termination, he overheard his supervisor, Defendant Carney, on the phone with Defendant Maruta, stating, "I finished that thing with the handicap spots… Richmond PD said most of the placards aren't in the names of the people actually parking there."

75.    Defendant Maruta responded, "Anyone who parks in a handicapped space but can walk on their own two legs is either a pussy or faking it."

76.    Plaintiff confronted Defendant Carney regarding the comments, and Defendant Carney abruptly ended the call.

77.    Plaintiff reported the incident as a violation of Defendant UPS's "Not In Our House" workplace antidiscrimination policy.

78.    HR later informed Plaintiff that the complaint had been "investigated," but would not disclose the result.

79.    Following Plaintiff's termination, he filed an internal appeal through Defendant UPS's Employment Disciplinary Review (EDR) process.

80.    The process was conducted by manager Jill Cude ("Ms. Cude.")

81.    Plaintiff was required to submit a timeline and select review panelists from a pre-approved list.

82.    Defendant UPS attempted to have Plaintiff sign a confidentiality agreement, but he refused, citing his rights under the Silenced No More Act and the STAND Act.

83.    Eventually, Defendant UPS acknowledged that their confidentiality policy was not compliant with California law and rescinded the agreement.

COMPLAINT FOR DAMAGES

84. Nonetheless, the EDR process did not lead to resolution of Plaintiff's dispute with Defendant UPS.

85. Plaintiff's experience reveals a clear pattern of race discrimination, racial harassment, disability discrimination, whistleblower retaliation, and retaliation for engaging in protected activity.

86. Defendant UPS initially refused to explain the purported reason for Plaintiff's termination, but later justified it with shifting and inconsistent accusations—none of which Defendant UPS ever substantiated.

87. The record reflects that Defendants not only targeted Plaintiff with mistreatment and blocked his well-deserved promotions, but also that Defendants illegally retaliated against Plaintiff for reporting discrimination, resisting confidentiality restrictions, and asserting his legal rights.

## FIRST CAUSE OF ACTION

## RACE DISCRIMINATION

(In Violation of F.E.H.A., Cal. Gov. Code § 12940(a))

(Against All Defendants)

88. Plaintiff incorporates the allegations set forth in paragraphs 1-87 as if set forth in full herein.

89. Defendant UPS was an employer within the meaning of Government Code § 12926(d). Defendants Carney, Woodruff, Maruta, and Tse were employees and agents of Defendant UPS.

90. Plaintiff Shawn Salter was an employee of Defendant UPS, having worked there for nearly two years in progressively more responsible positions including Loss Prevention Supervisor, Security Supervisor, Investigator, and ultimately Investigation Supervisor.

91. Defendants subjected Plaintiff to adverse employment actions. Specifically, Defendant UPS terminated Plaintiff's employment in mid-2023 without providing a reason. Additionally, Plaintiff was repeatedly denied promotions to full-time supervisor positions despite being qualified and encouraged to apply. Defendants UPS, Woodruff, and Tse selected less qualified candidates of other races for positions that Plaintiff had applied for, including hiring an

-9-

outside candidate who previously operated a fishing charter business and lacked relevant experience, and an Asian male candidate specifically selected based on his race.

92.    Plaintiff's race (white) was a substantial motivating reason for Defendants' conduct. This is evidenced by Defendant Tse's explicit statement that "I'm tired of all of these white guys in these positions... we need to bring more color onto the team. I want to bring on an Asian male." The company subsequently did hire an Asian male for the position in question. Defendant UPS regularly promoted or hired less qualified non-white candidates over Plaintiff despite his superior qualifications and experience.

93.    Plaintiff was harmed because he suffered loss of employment, loss of income and benefits, denial of promotion opportunities, and emotional distress. Plaintiff was also harmed by Defendant UPS's opposition to his unemployment benefits claim.

94.    Defendants' conduct was fraudulent, malicious, oppressive, and a substantial factor in causing Plaintiff's harm. Defendants' discriminatory actions directly resulted in Plaintiff's termination and denied promotions, which led to economic losses and emotional distress.

95.    As a legal result of the conduct of Defendants, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of the illegal and wrongful conduct of Defendants. Plaintiff does not claim that he has suffered any diagnosed psychiatric illness as a result of the conduct of Defendant.

96.    As a further legal result of the conduct of Defendants, Plaintiff was required, and/or in the future may be required, to engage the services of health care providers, and incurred expenses for health care services, supplies, medicines, health care appliances, modalities, and/or other related expenses in a sum to be ascertained according to proof.

97.    As a further legal result of the conduct of Defendants Plaintiff suffered other incidental and consequential damages, in an amount according to proof.

COMPLAINT FOR DAMAGES

98.    As a further legal result of the conduct of Defendants, Plaintiff is entitled to attorneys' fees and costs in an amount according to proof pursuant to California Government Code section 12965.

99.    As a further legal result of the conduct of Defendants, Plaintiff is entitled to prejudgment interest pursuant to California Civil Code section 3287 and/or any other provision of law providing for prejudgment interest.

## SECOND CAUSE OF ACTION

### DISABILITY DISCRIMINATION

(In Violation of F.E.H.A., Cal. Gov. Code § 12940(a))

(Against Defendants UPS, Carney, and Maruta)

100.    Plaintiff incorporates the allegations set forth in paragraphs 1-99 as if set forth in full herein.

101.    Defendant UPS was an employer within the meaning of Government Code § 12926(d). Defendant Carney and Defendant Maruta were employees and agents of Defendant UPS.

102.    Plaintiff Shawn Salter was an employee of Defendant UPS, having worked there for nearly two years in progressively responsible positions including Loss Prevention Supervisor, Security Supervisor, Investigator, and ultimately Investigation Supervisor.

103.    Defendants knew that Plaintiff had severe osteoarthritis that limited major life activities including walking and standing. Plaintiff formally submitted an accommodation request regarding his condition and need for accessible parking. Additionally, roughly five weeks before Plaintiff's termination, his supervisor Defendant Carney was overheard discussing Plaintiff's use of handicap parking with Defendant Maruta, demonstrating awareness of Plaintiff's disability.

104.    Plaintiff was able to perform the essential job duties of his position either with or without reasonable accommodation for his osteoarthritis. The narrative specifically mentions that Plaintiff's job required no physical labor, and he only needed accommodation for parking access to minimize walking distance to his office after being reassigned to a new facility in San Pablo.

105.    Defendants subjected Plaintiff to adverse employment actions. Specifically, Defendant UPS terminated Plaintiff's employment in mid-2023. Additionally, Defendants denied

- 11 -

Plaintiff's reasonable accommodation request for accessible parking, telling him to "pick your battles" and "move on." Defendant UPS ignored his formal accommodation request for over a year, addressing it only minimally after Plaintiff filed an internal HR complaint.

106.    Plaintiff's osteoarthritis was a substantial motivating reason for Defendants' conduct. This is evidenced by the derogatory comments made by Defendant Maruta approximately five weeks before Plaintiff's termination, stating that "Anyone who parks in a handicapped space but can walk on their own two legs is either a pussy or faking it." Additionally, the timing of Plaintiff's termination shortly after he confronted Defendant Carney about these disability-related comments and reported the incident as a violation of Defendant UPS's "Not In Our House" workplace antidiscrimination policy demonstrates a causal connection.

107.    Plaintiff was harmed because he suffered loss of employment, loss of income and benefits, physical pain from having to walk farther than necessary due to denied accommodation, and emotional distress from the discriminatory treatment and derogatory comments about his disability.

108.    Defendants' conduct was fraudulent, malicious oppressive, and a substantial factor in causing Plaintiff's harm. The discriminatory actions and comments, denial of accommodation, and subsequent termination directly resulted in Plaintiff's economic losses, physical discomfort, and emotional distress.

109.    As a legal result of the conduct of Defendants, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of the illegal and wrongful conduct of Defendants. Plaintiff does not claim that he has suffered any diagnosed psychiatric illness as a result of the conduct of Defendants.

110.    As a further legal result of the conduct of Defendants, Plaintiff was required, and/or in the future may be required, to engage the services of health care providers, and incurred expenses

- 12 -
COMPLAINT FOR DAMAGES

for health care services, supplies, medicines, health care appliances, modalities, and/or other related expenses in a sum to be ascertained according to proof.

111. As a further legal result of the conduct of Defendants, and each of them, Plaintiff suffered other incidental and consequential damages, in an amount according to proof.

112. As a further legal result of the conduct of Defendants, and each of them, Plaintiff is entitled to attorneys' fees and costs in an amount according to proof pursuant to California Government Code section 12965.

113. As a further legal result of the conduct of Defendants, and each of them, Plaintiff is entitled to prejudgment interest pursuant to California Civil Code section 3287 and/or any other provision of law providing for prejudgment interest.

## THIRD CAUSE OF ACTION

### FAILURE TO PROVIDE REASONABLE ACCOMMODATION

(In Violation of F.E.H.A., Cal. Gov. Code § 12940(m))

(Against Defendant UPS and Does 1 through 50)

114. Plaintiff incorporates the allegations set forth in paragraphs 1-113 as if set forth in full herein.

115. Defendant UPS was an employer within the meaning of Government Code § 12926(d).

116. Plaintiff was an employee of Defendant UPS, having worked there for nearly two years in progressively responsible positions including Loss Prevention Supervisor, Security Supervisor, Investigator, and ultimately Investigation Supervisor.

117. Plaintiff had severe osteoarthritis that limited major life activities including walking and standing. The condition resulted in bone-on-bone pain in his hip, making it difficult and painful for Plaintiff to walk long distances.

118. Defendant UPS knew of Plaintiff's osteoarthritis that limited walking and standing. Plaintiff formally submitted an accommodation request regarding his condition and need for accessible parking. Additionally, Plaintiff's supervisor Defendant Carney and manager Defendant

- 13 -

COMPLAINT FOR DAMAGES

Maruta were overheard discussing Plaintiff's disability and use of handicap parking, demonstrating management's awareness of Plaintiff's condition.

119.    Plaintiff was able to perform the essential duties of his current position with reasonable accommodation for his osteoarthritis. The narrative specifically states that Plaintiff's job required no physical labor, and he only needed accommodation for parking access to minimize walking distance to his office after being reassigned to a new facility in San Pablo.

120.    Defendant UPS failed to provide reasonable accommodation for Plaintiff's osteoarthritis. When Plaintiff requested accommodation after discovering that drivers were occupying all of the handicap parking spaces, and asked to be permitted to park near the building like other senior employees, management denied the request and told Plaintiff to "pick your battles" and "move on." Plaintiff formally submitted an accommodation request, but that request was ignored and Defendant UPS "strung Plaintiff along for more than a year." Only after Plaintiff filed an internal HR complaint did the issue receive "even minimal attention."

121.    Plaintiff was harmed because he suffered physical pain from having to walk farther than necessary due to the denied accommodation, causing aggravation of his osteoarthritis symptoms. Plaintiff also experienced emotional distress from the denial of accommodation and the derogatory comments made about his disability.

122.    Defendant UPS's failure to provide reasonable accommodation was fraudulent, oppressive, malicious, and a substantial factor in causing Plaintiff's harm. The denial of accessible parking directly caused Plaintiff to experience increased physical pain and discomfort in his daily work activities. Moreover, the failure to accommodate likely contributed to the hostile environment that culminated in Plaintiff's termination.

123.    As a legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result

- 14 -

of the illegal and wrongful conduct of Defendant UPS and Defendant Does 1 through 50. Plaintiff does not claim that he has suffered any diagnosed psychiatric illness as a result of the conduct of Defendant UPS and Defendant Does 1 through 50.

124.    As a further legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff was required, and/or in the future may be required, to engage the services of health care providers, and incurred expenses for health care services, supplies, medicines, health care appliances, modalities, and/or other related expenses in a sum to be ascertained according to proof.

125.    As a further legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff suffered other incidental and consequential damages, in an amount according to proof.

126.    As a further legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff is entitled to attorneys' fees and costs in an amount according to proof pursuant to California Government Code section 12965.

127.    As a further legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff is entitled to prejudgment interest pursuant to California Civil Code section 3287 and/or any other provision of law providing for prejudgment interest.

## FOURTH CAUSE OF ACTION

### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

(In Violation of F.E.H.A., Cal. Gov. Code § 12940(n))

(Defendant UPS and Defendant Does 1 through 50)

128.    Plaintiff incorporates the allegations set forth in paragraphs 1-127 as if set forth in full herein.

129.    Defendant UPS was an employer within the meaning of Government Code § 12926(d). Defendants Carney and Defendant Maruta were employees and agents of Defendant UPS.

130.    Plaintiff was an employee of Defendant UPS, having worked there for nearly two years in progressively responsible positions including Loss Prevention Supervisor, Security Supervisor, Investigator, and ultimately Investigation Supervisor.

- 15 -

COMPLAINT FOR DAMAGES

131. Plaintiff had severe osteoarthritis that was known to Defendant UPS. The condition resulted in bone-on-bone pain in his hip, making it difficult and painful for Plaintiff to walk long distances. Defendant UPS knew of Plaintiff's condition through his formal accommodation request and through management's discussions about his disability.

132. Plaintiff requested that Defendant UPS make reasonable accommodation for his osteoarthritis so that he would be able to perform the essential job requirements. Specifically, after being reassigned to a facility in San Pablo that required longer walking distances than his previous location in Oakland, Plaintiff requested accommodation for accessible parking near the building entrance, similar to what was provided to other senior employees.

133. Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made. Plaintiff formally submitted an accommodation request and followed up on the request when it was not addressed, demonstrating his willingness to engage in the interactive process.

134. Defendant UPS failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made. Instead of engaging in the interactive process, management told Plaintiff to "pick your battles" and "move on." Defendant UPS ignored Plaintiff's formal accommodation request and "strung Plaintiff along for more than a year." The issue only received "even minimal attention" after Plaintiff filed an internal HR complaint.

135. Defendant UPS could have made a reasonable accommodation when the interactive process should have taken place. The accommodation requested—parking closer to the building entrance—was reasonable and feasible, as evidenced by the fact that other senior employees were already permitted to park near the building. No undue hardship to the company has been identified that would have prevented this accommodation.

136. Plaintiff was harmed because suffered physical pain from having to walk farther than necessary, causing aggravation of his osteoarthritis symptoms. Additionally, Plaintiff experienced emotional distress from Defendant UPS's failure to engage with his accommodation needs. The ongoing failure to engage in the interactive process contributed to a hostile work environment,

COMPLAINT FOR DAMAGES

culminating in Plaintiff's termination after he reported disability-related comments as a violation of Defendant UPS's "Not In Our House" policy.

137.    Defendant UPS's failure to engage in a good-faith interactive process was fraudulent, oppressive, malicious, and a substantial factor in causing Plaintiff's harm. Had Defendant UPS properly engaged in the interactive process, a reasonable accommodation could have been implemented that would have alleviated Plaintiff's physical pain and prevented the escalation of hostility that led to his termination. The company's dismissive approach to Plaintiff's disability-related needs directly contributed to both his physical discomfort and the deterioration of his employment relationship.

138.    As a legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of Defendant UPS and Defendant Does 1 through 50's illegal and wrongful conduct. Plaintiff does not claim that she has suffered any diagnosed psychiatric illness as a result of the conduct of Defendant UPS and Defendant Does 1 through 50.

139.    As a further legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff was required, and/or in the future may be required, to engage the services of health care providers, and incurred expenses for health care services, supplies, medicines, health care appliances, modalities, and/or other related expenses in a sum to be ascertained according to proof.

140.    As a further legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff suffered other incidental and consequential damages, in an amount according to proof.

/ / /

/ / /

COMPLAINT FOR DAMAGES

141.    As a further legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff is entitled to attorneys' fees and costs in an amount according to proof pursuant to California Government Code section 12965.

142.    As a further legal result of the conduct of Defendants, and each of them, Plaintiff is entitled to prejudgment interest pursuant to California Civil Code section 3287 and/or any other provision of law providing for prejudgment interest.

## FIFTH CAUSE OF ACTION

## HARASSMENT (DISABILITY)

(In Violation of F.E.H.A., Cal. Gov. Code § 12940(j))

(Against Defendant UPS, Defendant Carney, Defendant Maruta, and Defendant Does 1 through 50)

143.    Plaintiff incorporates the allegations set forth in paragraphs 1-143 as if set forth in full herein.

144.    Plaintiff was an employee of Defendant UPS, having worked there for nearly two years in progressively responsible positions including Loss Prevention Supervisor, Security Supervisor, Investigator, and ultimately Investigation Supervisor.

145.    Plaintiff was subjected to harassing conduct because he had a disability. Specifically, Plaintiff suffered from severe osteoarthritis resulting in bone-on-bone pain in his hip. The harassment included derogatory comments about his disability, dismissive responses to his accommodation requests, and targeted scrutiny of his use of handicap parking.

146.    The harassing conduct was severe or pervasive. Approximately five weeks before Plaintiff's termination, Defendant Maruta made explicitly derogatory comments about disabled persons, stating that "Anyone who parks in a handicapped space but can walk on their own two legs is either a pussy or faking it." Plaintiff's supervisor, Defendant Carney, was on the phone with Defendant Maruta during this comment and failed to address the offensive statement. Additionally, management told Plaintiff to "pick your battles" and "move on" when he requested accommodation, ignored his formal accommodation request for more than a year, and conducted an investigation into handicap placard usage that targeted Plaintiff. This pattern of conduct created a pervasively hostile environment for Plaintiff based on his disability.

- 18 -

COMPLAINT FOR DAMAGES

147. A reasonable person with a disability in Plaintiff's circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive. The explicit derogatory language used by management about disabled individuals, combined with the refusal to engage with accommodation needs and the scrutiny of Plaintiff's disability status, would create an objectively hostile work environment for any reasonable person with a disability.

148. Plaintiff considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive. When Plaintiff overheard the derogatory comments about disabled employees, he immediately confronted Defendant Carney regarding the comments. Plaintiff also reported the incident as a violation of Defendant UPS's "Not In Our House" workplace antidiscrimination policy, demonstrating that he found the conduct offensive and abusive.

149. Supervisors engaged in the conduct. Defendant Maruta, a manager at Defendant UPS, made the explicitly derogatory comments about disabled persons. Defendant Carney, Plaintiff's direct supervisor, participated in the conversation containing these comments and failed to address them. Both Defendants Maruta and Carney are supervisors who directly participated in the harassing conduct. Additionally, when Plaintiff reported the disability-related harassment, Defendant UPS failed to take immediate and appropriate corrective action, only informing Plaintiff that the complaint had been "investigated" without disclosing the result or taking any apparent remedial action.

150. Plaintiff was harmed because he suffered emotional distress from the harassment and derogatory comments about his disability. The hostile work environment based on his disability also contributed to his termination after he reported the harassment, resulting in loss of employment, income, and benefits.

151. Defendant UPS, Defendant Carney, Defendant Maruta, and Defendant Does 1 through 50's conduct was fraudulent, oppressive, malicious, and a substantial factor in causing Plaintiff's harm. The disability-based harassment directly impacted Plaintiff's dignity, working conditions, and employment status. The hostile environment created by the conduct of Defendant UPS, Defendant Carney, Defendant Maruta, and Defendant Does 1 through 50 directly led to Plaintiff's emotional distress and culminated in his termination after he reported the harassment.

- 19 -

COMPLAINT FOR DAMAGES

152. As a legal result of the conduct of Defendant UPS, Defendant Carney, Defendant Maruta, and Defendant Does 1 through 50, and each of them, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of Defendant UPS, Defendant Carney, Defendant Maruta, and Defendant Does 1 through 50's illegal and wrongful conduct. Plaintiff does not claim that she has suffered any diagnosed psychiatric illness as a result of the conduct of Defendant UPS, Defendant Carney, Defendant Maruta, and Defendant Does 1 through 50.

153. As a further legal result of the conduct of Defendant UPS, Defendant Carney, Defendant Maruta, and Defendant Does 1 through 50, and each of them, Plaintiff was required, and/or in the future may be required, to engage the services of health care providers, and incurred expenses for health care services, supplies, medicines, health care appliances, modalities, and/or other related expenses in a sum to be ascertained according to proof.

154. As a further legal result of the conduct of Defendant UPS, Defendant Carney, Defendant Maruta, and Defendant Does 1 through 50, and each of them, Plaintiff suffered other incidental and consequential damages, in an amount according to proof.

155. As a further legal result of the conduct of Defendant UPS, Defendant Carney, Defendant Maruta, and Defendant Does 1 through 50, and each of them, Plaintiff is entitled to attorneys' fees and costs in an amount according to proof pursuant to California Government Code section 12965.

156. As a further legal result of the conduct of Defendant UPS, Defendant Carney, Defendant Maruta, and Defendant Does 1 through 50, and each of them, Plaintiff is entitled to prejudgment interest pursuant to California Civil Code section 3287 and/or any other provision of law providing for prejudgment interest.

/ / /

- 20 -
COMPLAINT FOR DAMAGES

## SIXTH CAUSE OF ACTION

### HARASSMENT (RACE)

(In Violation of F.E.H.A., Cal. Gov. Code § 12940(j))

(Against Defendant UPS, Defendant Tse, Defendant Woodruff, and Defendant Does 1 through 50)

157.    Plaintiff incorporates the allegations set forth in paragraphs 1-157 as if set forth in full herein.

158.    Plaintiff was an employee of Defendant UPS, having worked there for nearly two years in progressively responsible positions including Loss Prevention Supervisor, Security Supervisor, Investigator, and ultimately Investigation Supervisor.

159.    Plaintiff was subjected to harassing conduct because of his race (white). The harassment included explicit statements of racial bias against white employees, prejudicial treatment in promotion decisions, and a pattern of conduct that denigrated Plaintiff based on his race.

160.    The harassing conduct was severe or pervasive. Defendant Tse openly expressed racial animus toward white employees, stating "I'm tired of all of these white guys in these positions... we need to bring more color onto the team. I want to bring on an Asian male." This explicitly race-based statement was made in the context of employment decisions that directly affected Plaintiff. Furthermore, Plaintiff was repeatedly passed over for promotions despite his qualifications, with positions instead going to less qualified candidates of other races, including an Asian male candidate specifically selected based on race as Defendant Tse had stated. The pattern of race-based comments and discriminatory promotion decisions created a pervasively hostile environment for Plaintiff based on his race.

161.    A reasonable person of Plaintiff's race in Plaintiff's circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive. The explicit statements of racial bias against white employees, combined with the pattern of discriminatory promotion decisions, would create an objectively hostile work environment for any reasonable person in Plaintiff's position.

- 21 -

COMPLAINT FOR DAMAGES

162.    Plaintiff considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive. Plaintiff raised concerns about the discriminatory treatment with Defendant Woodruff, demonstrating that he found the conduct offensive. Plaintiff also asked Defendant Woodruff specific questions about inconsistencies in promotion decisions, showing his awareness of and objection to the discriminatory environment.

163.    Supervisors engaged in the conduct. Defendant Tse, who had authority over hiring and promotion decisions, made the explicitly race-based comments and influenced promotion decisions based on racial preferences. Additionally, Defendant Woodruff, who claimed to "make all the final decisions on full-time supervisors," participated in and enforced the discriminatory promotion system. Both Defendant Tse and Defendant Woodruff are supervisors who directly participated in the harassing conduct or had knowledge of it and failed to take corrective action.

164.    Plaintiff was harmed because he suffered emotional distress from the race-based harassment and discriminatory treatment. The hostile work environment based on his race also contributed to his denial of promotions and eventual termination, resulting in loss of employment opportunities, income, and benefits.

165.    The conduct of Defendant UPS, Defendant Tse, and Defendant Woodruff was fraudulent, oppressive, malicious, and a substantial factor in causing Plaintiff's harm. The race-based harassment directly impacted Plaintiff's dignity, promotional opportunities, working conditions, and ultimately his employment status. The hostile environment created by the conduct of Defendant UPS, Defendant Tse, and Defendant Woodruff directly led to Plaintiff's emotional distress, lost promotions, and contributed to his termination.

166.    As a legal result of the conduct of Defendant UPS, Defendant Tse, Defendant Woodruff, and Defendant Does 1 through 50, and each of them, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of Defendant UPS, Defendant Tse,

- 22 -

COMPLAINT FOR DAMAGES

Defendant Woodruff, and Defendant Does 1 through 50's illegal and wrongful conduct. Plaintiff does not claim that she has suffered any diagnosed psychiatric illness as a result of the conduct of Defendant UPS, Defendant Tse, Defendant Woodruff, and Defendant Does 1 through 50.

167. As a further legal result of the conduct of Defendant UPS, Defendant Tse, Defendant Woodruff, and Defendant Does 1 through 50, and each of them, Plaintiff was required, and/or in the future may be required, to engage the services of health care providers, and incurred expenses for health care services, supplies, medicines, health care appliances, modalities, and/or other related expenses in a sum to be ascertained according to proof.

168. As a further legal result of the conduct of Defendant UPS, Defendant Tse, Defendant Woodruff, and Defendant Does 1 through 50, and each of them, Plaintiff suffered other incidental and consequential damages, in an amount according to proof.

169. As a further legal result of the conduct of Defendant UPS, Defendant Tse, Defendant Woodruff, and Defendant Does 1 through 50, and each of them, Plaintiff is entitled to attorneys' fees and costs in an amount according to proof pursuant to California Government Code section 12965.

170. As a further legal result of the conduct of Defendant UPS, Defendant Tse, Defendant Woodruff, and Defendant Does 1 through 50, and each of them, Plaintiff is entitled to prejudgment interest pursuant to California Civil Code section 3287 and/or any other provision of law providing for prejudgment interest.

## SEVENTH CAUSE OF ACTION

## RETALIATION (F.E.H.A.)

(In Violation of F.E.H.A., Cal. Gov. Code § 12940(h))

(Defendant UPS and Defendant Does 1 through 50)

171. Plaintiff incorporates the allegations set forth in paragraphs 1-171 as if set forth in full herein.

172. Plaintiff engaged in protected activities under FEHA. Specifically, Plaintiff:

    a. Reported disability discrimination and harassment when he confronted Defendant Carney regarding Defendant Maruta's derogatory comments about

COMPLAINT FOR DAMAGES

disabled employees and reported the incident as a violation of Defendant UPS's "Not In Our House" workplace antidiscrimination policy;

b. Formally requested disability accommodation for his osteoarthritis and followed up on this request when it was ignored;

c. Reported race discrimination in promotion decisions when he questioned Defendant Woodruff about inconsistent and biased hiring practices;

d. Refused to sign a confidentiality agreement that violated his rights under the Silenced No More Act, instead signing "under protest"; and

e. Detailed reports of retaliation, discrimination, and a hostile work environment during the investigatory interview conducted by Defendant UPS.

173. Defendant UPS discharged Plaintiff. In mid-2023, Plaintiff was called into a meeting by a manager who informed him that he was being terminated effective immediately but refused to provide a reason, stating that Plaintiff could "find that out later." Plaintiff was then escorted out of the building.

174. Plaintiff's protected activities were substantial motivating reasons for Defendant UPS's decision to discharge Plaintiff. This causal connection is evidenced by:

a. The timing of the termination, which occurred shortly after Plaintiff reported disability-related harassment;

b. The refusal to provide any reason for termination at the time of discharge;

c. The shifting and inconsistent post-hoc justifications for the termination, including claims of "breaking confidentiality and retaliation" that were unsupported by evidence;

d. The fact that Defendant UPS fired Defendant Woodruff approximately five weeks after Plaintiff's post-termination interview with a corporate investigator, for "retaliation and blocking promotions" - the same issues Plaintiff had reported;

e. Defendant Carney and management's fabrication of allegations that Plaintiff had created a "hostile environment" following his complaints, demonstrating retaliatory intent; and

- 24 -

COMPLAINT FOR DAMAGES

f.  The pattern of adverse actions, including blocked promotions, that began after Plaintiff raised concerns about discrimination.

175.    Plaintiff was harmed. Plaintiff lost his job, income, and benefits. Additionally, Plaintiff suffered emotional distress from the retaliatory termination and damage to his professional reputation. Plaintiff was also harmed by Defendant UPS's opposition to his unemployment benefits claim.

176.    Defendant UPS's decision to discharge Plaintiff was fraudulent, oppressive, malicious, and a substantial factor in causing Plaintiff's harm. The termination directly resulted in Plaintiff's loss of employment, income, and benefits, as well as emotional distress and reputational damage.

177.    As a legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of Defendant UPS and Defendant Does 1 through 50's illegal and wrongful conduct. Plaintiff does not claim that she has suffered any diagnosed psychiatric illness as a result of the conduct of Defendant UPS and Defendant Does 1 through 50.

178.    As a further legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff was required, and/or in the future may be required, to engage the services of health care providers, and incurred expenses for health care services, supplies, medicines, health care appliances, modalities, and/or other related expenses in a sum to be ascertained according to proof.

179.    As a further legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff suffered other incidental and consequential damages, in an amount according to proof.

COMPLAINT FOR DAMAGES

180. As a further legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff is entitled to attorneys' fees and costs in an amount according to proof pursuant to California Government Code section 12965.

181. As a further legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff is entitled to prejudgment interest pursuant to California Civil Code section 3287 and/or any other provision of law providing for prejudgment interest.

## EIGHTH CAUSE OF ACTION

## RETALIATION (WHISTLEBLOWER)

### (In Violation of Cal. Labor Code § 1102.5)

### (Defendant UPS and Does 1 through 50)

182. Plaintiff incorporates the allegations set forth in paragraphs 1-182 as if set forth in full herein.

183. Defendant UPS was Plaintiff Shawn Salter's employer.

184. Plaintiff disclosed to persons with authority over him and to employees with authority to investigate, discover, or correct legal violations that:

    a. UPS was engaging in unlawful disability discrimination by refusing to accommodate his osteoarthritis and by making derogatory comments about disabled employees;

    b. UPS was engaging in unlawful race discrimination in its promotion and hiring decisions;

    c. UPS was violating California's Silenced No More Act and STAND Act by requiring employees to sign unlawful confidentiality agreements regarding discrimination complaints; and

    d. UPS violated its own "Not In Our House" workplace antidiscrimination policy, which implements legal requirements against discrimination and harassment. Plaintiff made these disclosures to his supervisors, to HR representatives, and ultimately to UPS corporate headquarters, including the CEO and four senior HR vice presidents.

- 26 -

COMPLAINT FOR DAMAGES

185. Plaintiff had reasonable cause to believe that the information disclosed constituted violations of state and federal statutes and regulations, including:

    a. The Fair Employment and Housing Act's prohibitions against disability discrimination, race discrimination, and failure to provide reasonable accommodation;

    b. The Americans with Disabilities Act's requirements for reasonable accommodation;

    c. Title VII of the Civil Rights Act's prohibition on race discrimination; and

    d. California's Silenced No More Act and STAND Act, which prohibit employers from requiring employees to sign agreements that prevent the disclosure of information about unlawful acts in the workplace.

186. Defendant UPS discharged Plaintiff. In mid-2023, Plaintiff was called into a meeting by a manager who informed him that he was being terminated effective immediately without providing a reason. Plaintiff was then escorted out of the building.

187. Plaintiff's disclosure of information about unlawful discrimination, harassment, and confidentiality requirements was a contributing factor in UPS's decision to discharge Plaintiff. This is evidenced by:

    a. The timing of the termination, which occurred shortly after Plaintiff reported violations of antidiscrimination laws;

    b. The refusal to provide any reason for termination at the time of discharge, followed by shifting and inconsistent post-hoc justifications;

    c. The subsequent termination of Defendant Woodruff for "retaliation and blocking promotions" after Plaintiff's post-termination interview with a corporate investigator - confirming the veracity of Plaintiff's whistleblowing;

    d. The fabrication of allegations against Plaintiff following his protected disclosures; and

    e. The pattern of increasing hostility and adverse actions after Plaintiff raised concerns about legal violations.

- 27 -

COMPLAINT FOR DAMAGES

188. Plaintiff was harmed because he lost his job, income, and benefits. Additionally, Plaintiff suffered emotional distress from the retaliatory termination and damage to his professional reputation. Plaintiff was also harmed by UPS's opposition to his unemployment benefits claim.

189. Defendant UPS's conduct was fraudulent, oppressive, malicious, and a substantial factor in causing Plaintiff's harm. The retaliatory termination directly resulted in Plaintiff's loss of employment, income, and benefits, as well as emotional distress and reputational damage.

190. As a legal result of the conduct of Defendant UPS and Defendant Does 1 through 50, and each of them, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of Defendants' illegal and wrongful conduct. Plaintiff does not claim that she has suffered any diagnosed psychiatric illness as a result of the conduct of Defendants.

191. As a further legal result of the conduct of Defendants, and each of them, Plaintiff was required, and/or in the future may be required, to engage the services of health care providers, and incurred expenses for health care services, supplies, medicines, health care appliances, modalities, and/or other related expenses in a sum to be ascertained according to proof.

192. As a further legal result of the conduct of Defendants, and each of them, Plaintiff suffered other incidental and consequential damages, in an amount according to proof.

193. As a further legal result of the conduct of Defendants, and each of them, Plaintiff is entitled to attorneys' fees and costs in an amount according to proof pursuant to California Labor Code section 1102.5(j) and Code of Civil Procedure section 1021.5.

194. As a further legal result of the conduct of Defendants, and each of them, Plaintiff is entitled to prejudgment interest pursuant to California Civil Code section 3287 and/or any other provision of law providing for prejudgment interest.

///

///

- 28 -

COMPLAINT FOR DAMAGES

## NINTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S SILENCED NO MORE ACT/STAND ACT

(In Violation of Cal. Gov. Code § 12964.5)

(Against All Defendants)

195. Plaintiff incorporates the allegations set forth in paragraphs 1-195 as if set forth in full herein.

196. Plaintiff engaged in protected activity by disclosing and discussing workplace harassment and discrimination, and by participating in investigations related to such claims. Specifically, Plaintiff:

    a. Reported disability discrimination and harassment, including derogatory comments made by Defendant Maruta about disabled employees;

    b. Reported race discrimination in promotion and hiring decisions;

    c. Raised concerns about the company's failure to investigate his complaints of discrimination;

    d. Participated in the investigatory interview regarding discrimination and retaliation claims; and

    e. Provided information during the post-termination interview with a corporate investigator about discrimination and retaliation he experienced.

197. Adverse Employment Action: Defendant UPS took adverse employment actions against Plaintiff that would dissuade a reasonable person from engaging in the protected activity. Specifically, Defendant UPS:

    a. Required Plaintiff to sign a confidentiality agreement as a condition of participating in the interview with the "neutral" investigator, and threatened that refusal would be treated as a voluntary resignation;

    b. Attempted to have Plaintiff sign another confidentiality agreement during the Employment Disciplinary Review (EDR) process;

    c. Terminated Plaintiff's employment following his reports of discrimination and harassment; and

- 29 -

COMPLAINT FOR DAMAGES

    d. Opposed Plaintiff's unemployment benefits claim based on pretextual grounds.

198. There was a causal connection between Plaintiff's protected activity and the adverse employment actions. This is evidenced by:

    a. The temporal proximity between Plaintiff's refusal to waive his rights under the Silenced No More Act and the adverse actions;

    b. UPS's explicit threat that refusal to sign the confidentiality agreement would be treated as a voluntary resignation;

    c. The pattern of retaliatory conduct following Plaintiff's assertion of his rights under the Silenced No More Act; and

    d. UPS's eventual acknowledgment that "their confidentiality policy was not compliant with California law," demonstrating that Plaintiff was correct in his objection.

199. Defendant UPS violated California's Silenced No More Act and STAND Act by attempting to require Plaintiff to sign agreements that would prevent him from disclosing information about unlawful acts in the workplace, including discrimination and harassment. UPS not only attempted to impose these unlawful confidentiality requirements but also threatened adverse employment consequences for refusal to comply, including treating refusal as a "voluntary resignation."

200. Ms. Cude, who conducted the EDR process, and other HR personnel who attempted to enforce these unlawful confidentiality requirements, participated in and facilitated these violations in their capacity as agents of Defendant UPS.

201. As a result of these violations, Plaintiff suffered harm including loss of employment, loss of income and benefits, and emotional distress. UPS's violations of the Silenced No More Act were a substantial factor in causing Plaintiff's harm, as they were part of the pattern of retaliatory conduct that culminated in his termination and the subsequent opposition to his unemployment benefits.

202. As a legal result of the conduct of Defendants, and each of them, Plaintiff has suffered and will continue to suffer physical, mental, and emotional injuries, pain, distress, anguish,

COMPLAINT FOR DAMAGES

fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as a result of Defendants' illegal and wrongful conduct. Plaintiff does not claim that she has suffered any diagnosed psychiatric illness as a result of the conduct of Defendants.

203.   As a further legal result of the conduct of Defendants, and each of them, Plaintiff was required, and/or in the future may be required, to engage the services of health care providers, and incurred expenses for health care services, supplies, medicines, health care appliances, modalities, and/or other related expenses in a sum to be ascertained according to proof.

204.   As a further legal result of the conduct of Defendants, and each of them, Plaintiff suffered other incidental and consequential damages, in an amount according to proof.

205.   As a further legal result of the conduct of Defendants, and each of them, Plaintiff is entitled to attorneys' fees and costs in an amount according to proof pursuant to California Government Code section 12965.

206.   As a further legal result of the conduct of Defendants, and each of them, Plaintiff is entitled to prejudgment interest pursuant to California Civil Code section 3287 and/or any other provision of law providing for prejudgment interest.

**PRAYER**

WHEREFORE, Plaintiff seeks judgment against Defendants, and each of them, for:

1.   On each cause of action, for physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to reputation, and other non-economic damages, in a sum to be ascertained according to proof;

2.   On each cause of action, for health care services, supplies, medicines, health care appliances, modalities, and other related expenses in a sum to be ascertained according to proof;

- 31 -

COMPLAINT FOR DAMAGES

3. On each cause of action, for loss of wages, income, earnings, earning capacity, overtime, pension, benefits, and other economic damages in a sum to be ascertained according to proof;

4. Other actual, consequential, and/or incidental damages in a sum to be ascertained according to proof;

5. Attorney fees and costs of suit pursuant to California Government Code Section 12965, California Labor Code Section 1102.5(j), Code of Civil Procedure Section 1021.5, and other authorities;

6. Costs of suit herein incurred;

7. On each cause of action, for punitive damages against all defendants;

8. Prejudgment interest; and

9. Such other and further relief as the Court may deem just and proper.

DATED: April 17, 2025                    THE LAW OFFICE OF SHAWN P. THOMAS

By: _____
SHAWN P. THOMAS
**Attorney for Plaintiff**
SHAWN SALTER

DATED: April 17, 2025                    ARDEN LAW FIRM, P.C.

By: _____
MAKS SHAPIRO
**Attorney for Plaintiff**
SHAWN SALTER

- 32 -
COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

DATED: April 17, 2025

THE LAW OFFICE OF SHAWN P. THOMAS

By: _____
SHAWN P. THOMAS
**Attorney for Plaintiff**
SHAWN SALTER

DATED: April 17, 2025

ARDEN LAW FIRM, P.C.

By: *Maks Shapiro*
MAKS SHAPIRO
**Attorney for Plaintiff**
SHAWN SALTER

- 33 -

COMPLAINT FOR DAMAGES

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*

Maks Shapiro, Esq. (SBN325832)　　　Shawn P. Thomas, Esq. (SBN302593)
Arden Law Firm, P.C.　　　　　　　　The Law Office of Shawn P. Thomas
320 N. Palm Drive, Unit 115, Beverly Hills, CA 90210　　1318 Silver Lake Blvd., Los Angeles, CA 90026

TELEPHONE NO.:　　310-633-5310; 718-541-7934　　FAX NO. :
EMAIL ADDRESS:　　mshapiro@arden.law; SPT@shawnthomas.esq
ATTORNEY FOR *(Name):*　　Plaintiff, Shawn Salter

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
**04/17/2025**
By: _____P. Russell_____ Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**
STREET ADDRESS:　720 9th Street
MAILING ADDRESS:
CITY AND ZIP CODE:　Sacramento, 95814
BRANCH NAME:　Gordon D. Schaber Sacramento County Courthouse

CASE NAME:　SHAWN SALTER, an individual v. UNITED PARCEL SERVICE, INC., an Ohio Corporation, ROGER CARNEY, an individual, LEE MARUTA, an individual, KIM TSE, an individual, MATTHEW WOODRUFF, an individual, and DOES 1 through 50, inclusive,

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ **Unlimited** ☐ **Limited** (Amount demanded exceeds $35,000) (Amount demanded is $35,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **25CV009320** JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☑ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 4/17/2025

Maks Shapiro, Esq.
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET** CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

CM-010 [Rev. January 1, 2024] **CIVIL CASE COVER SHEET** Page 2 of 2

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form | | Clear this form |